Jack Hain, Esq.
55 River Street - Suite 150
Santa Cruz, CA 95060
831-515-7615
jackhain3721@gmail.com
Attorney for Jacklyn A. Johnston

## UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: ) Case No.: 19-52354 MEH 7
)
Steven Eugene Bonner, ) COMPLAINT FOR DAMAGES AND
　　　　Debtor, ) NONDISCHARGEABILITY OF DEBT
_____ ) [11 U.S.C. 523(a)(2)(A) and (4).
)
Jacklyn A. Johnston, )
　　　　Plaintiff, )
　　　　vs. )
Steven Bonner, )
　　　　Defendant )

## PROCEDURAL HISTORY

Plaintiff filed a Second Amended Complaint (SAC) in state court alleging the joint and several liability of debtor and his company, Bay Area Acquisitions and Sales, LLC (BAAS,) for fraud, breach of fiduciary duty and alter ego liability against both defendants[1]. Debtor and BAAS filed Answers to the SAC. Debtor then left the U.S. and went to an undisclosed place for the remainder of the litigation[2].

_____

[1] see attached EXHIBIT 1.

[2] see Minute Order relieving counsel from representing debtor and BAAS after counsel indicated that debtor has left the U.S. and is in an undisclosed location, and that there has been a breakdown in communications and the attorney-client relationship, attached as EXHIBIT 2.

Johnston v. Bonner　　　COMPLAINT　　　Case No.: 19-52354 MEH 7　　　1

Plaintiff obtained a default judgment against debtor as a terminating sanction due to his failure to respond to discovery.3 However, Plaintiff never proved up damages against him. Plaintiff obtained a default judgment against BAAS for $350,239.72.4

Plaintiff first became aware of debtor's re-entry into the United States by receipt of this Court's notice of his 11/19/19 filing for bankruptcy. Plaintiff now seeks damages by order of this court arising from debtor's fraud and breach of fiduciary duty.

Debtor's filed petition acknowledges his default to plaintiff in state court and a $200,000 debt owed to plaintiff.5

## JURISDICTION AND VENUE

This complaint is brought under 11 U.S.C.A. Section 523 U.S.C. 523(a)(2)(A) and (4) objecting to the dischargeability of damages and debts owed plaintiff for fraud breach of fiduciary duty and intentional misrepresentation. This adversary proceeding relates to this case under Chapter 7 of the Bankruptcy Code, now pending in this court.

## FIRST CAUSE OF ACTION
## 11 U.S.C. Section 523(a)(2)(A)

1. At all relevant times stated herein, debtor was plaintiff's financial advisor through his company, Allied Financial Network, at 365 East Campbell Ave., Campbell, CA.

2. Debtor defrauded plaintiff by making the representations of material fact in paragraphs 3 through 12, below.

3. On or about 8/29/14, debtor advised plaintiff to invest in the development and sale of certain raw land in Scotts Valley, California, which he stated BAAS owned.

4. Debtor also told plaintiff that he owned and managed BAAS.

5. On or about 8/29/14, debtor told plaintiff that if she loaned $200,000 to BAAS, it would use the money to build a house on an empty lot it owned at 2400 Lockhart Gulch Rd. in Scotts Valley, CA. He said the house would be completed within about one year

---

3 see default judgment, attached as EXHIBIT 3

4 see default judgment, attached as EXHIBIT 4

5 see petition, pgs. 22 and 36 of 52

Johnston v. Bonner     COMPLAINT     Case No.: 19-52354 MEH 7          2

of the date of the loan, and that BAAS would then promptly sell the property and return plaintiff's money to her, plus interest at a rate of 10% a year.

6.     On 8/29/14, debtor gave plaintiff a document entitled "Private Placement Offering" (OFFER) by BAAS, attached to the Complaint in EXHIBIT 1, which stated that BAAS was in the business of buying and developing real estate for sale and was seeking investors. It stated that debtor managed the company.

7.     In justifiable reliance upon debtor's representations, plaintiff gave debtor a check for $200,000 payable to BAAS to improve and sell PROPERTY, as debtor had promised. The check was then cashed.

8.     After making her loan, plaintiff repeatedly asked debtor about the status of the property. In response, debtor stated that work on the property was continuing.

9.     The statements made by debtor in paragraphs 5 and 6 were false. The truth is:

   a)  BAAS was not an entity separate from debtor. Rather, it was his alter ego,

   b)  plaintiff's investment was not used to build a house on the subject lot,

   c)  no improvements were made to the property, and

   d)  Debtor has refused to return any of the plaintiff's investment or accrued interest upon request after he failed to build the home on the property.

10.    When debtor made these false representations, he knew they were false.

11.    Debtor made the representations with the intent to defraud and induce plaintiff to give BAAS $200,000. At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true.

12.    Because of plaintiff's reliance upon debtor's conduct, plaintiff lost $200,000, plus 10% annual interest from the date of the plaintiff's investment. Debtor has refused to return plaintiff's investment and pay plaintiff interest due.

13.    Plaintiff objects to the dischargeability of its default judgment against debtor under 11 U.S.C. Section 523 U.S.C. 523(a)(2)(A) on grounds that the debtor's actions involving plaintiff were fraudulent, through the intentional use of false statements and actual fraud.

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 3 of 52

## SECOND CAUSE OF ACTION
### 11 U.S.C. Section 523(a)(4)

14.     Plaintiff repeats each and every allegation in paragraphs 1 through 12, above.

15.     At all relevant times stated herein, debtor was plaintiff's financial advisor through his company, Allied Financial Network, at 365 East Campbell Ave., Campbell, CA, providing investment and financial management advice regarding her inheritance from her father's estate, as well as credit repair and insurance services.

16.     By and through his fraud and deceit, debtor breached his fiduciary duty and obligations to plaintiff, his client.

17.     As a result of the foregoing, plaintiff has been damaged by the loss of $200,000, plus interest at a rate of 10% per year from the date of her loan, 8/29/14, to the present.

18.     Plaintiff objects to the dischargeability of its default judgment against debtor under 11 U.S.C. Section 523 U.S.C. 523(a)(4) on the grounds that the debtor's actions involving plaintiff were fraudulent while he acted in a fiduciary capacity.

WHEREFORE, plaintiff prays for judgment on the first and second causes of action, as follows:

1.     denying dischargeability of plaintiff's state court judgment establishing liability of debtor for damages suffered by plaintiff, and

2.     finding that debtor defrauded plaintiff of $200,000, plus interest of 10% per year from 8/29/14 to the present, (currently $109,425) and

3.     awarding the above-described damages, plus exemplary damages in an amount determined by the Court, plus costs of suit herein incurred, and such other and further relief as the court may deem proper.

Date:  February 12, 2020

Jack Hain, attorney for plaintiff, Jacklyn Johnston

Johnston v. Bonner     COMPLAINT     Case No.: 19-52354 MEH 7     4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 1

28

Johnston v. Bonner     COMPLAINT     5

1 | Jack Hain, Esq.
  | 55 River Street - Suite 150
2 | Santa Cruz, CA 95060
  | 831-515-7615
3 | jhain@pacbell.net
  | Attorney for Jacklyn A. Johnston
4
5
6
7
8

## Superior Court of California
## Santa Cruz County

| | |
|---|---|
| 9  Jacklyn A. Johnston, | Case No.: 16CV03031 |
| 10           Plaintiff, | |
| 11     vs. | SECOND AMENDED COMPLAINT |
| | UNLIMITED CIVIL CASE |
| 12  Steven E. Bonner, Johanna Bonner, Roger D. | DEMAND FOR JURY TRIAL |
| Wintle, Susan Weber, Christine Frazier, | |
| 13  Gabriel Perez, Ray Diaz, Bay Area Acquisitions | Breach of Contract; |
| and Sales, L.L.C., Principal Securities, Inc. and | Fraud (CC Sections 1571, 1709, 1710,); |
| 14  DOES 1-9, | Pen. C. Section 496(a) and (c); |
| | Alter Ego Liability (Corp, C, Section 17703.04); |
| 15           Defendants. | Imposition of Constructive Trust and |
| Principal Securities, | Temporary Injunction; |
| 16           Cross-Complainants, | Negligence; |
| | Breach of Fiduciary Duty |
| 17     vs. | |
| Steven E. Bonner, Bay Area | Trial Date: Undetermined |
| 18  Acquisitions and Sales, L.L.C., and DOES 1-9, | Hon. John Gallagher |
| | Department 10 |
| 19           Cross-Defendants. | |

20 PRELIMINARY ALLEGATIONS

21     1.     Plaintiff, Jacklyn A. Johnston, alleges the following causes of action against defendants

22 Steven E. Bonner (BONNER), Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier,

23 Gabriel Perez, Ray Diaz, Bay Area Acquisitions and Sales, L.L.C. (BAAS) and Principal Securities,

24 Inc. (PRINCIPAL).

25     2.     Each defendant named above is a natural person except BAAS, a California limited

26 liability company, and PRINCIPAL, a corporation.

27

28

Johnston v. Bonner, et al.          SECOND AMENDED COMPLAINT                    1

3.     The true names of defendants sued as DOES are unknown to plaintiff.  DOE defendants 1-5 were the agents or employees of the named defendants. DOE defendants 6-9 are persons whose capacities are unknown to plaintiff.

4.     This court is the proper court because a defendant entered into a contract here, the contract was to be performed here, real property that is the subject of this action is located here and the subject fraud in the Complaint was committed in its jurisdictional area.

FIRST CAUSE OF ACTION<br>Breach of Contract by Bay Area Acquisitions and Sales, L.L.C.

5.     At all times described herein, BAAS was a California limited liability company organized and existing under the laws of the State of California.

6.     At all times described herein, BONNER was a member and agent of BAAS, and in doing the things herein alleged was acting in the course and scope of that agency.

7.     Plaintiff alleges that on or about 8/29/14, an oral agreement was made between herself and BAAS, through its agent, BONNER.

8.     The terms of the agreement are as follows: If plaintiff loaned $200,000 to BAAS, it would use the money to build a house on an empty lot it owned at 2400 Lockhart Gulch Rd. in Scotts Valley, CA, Santa Cruz Co. A.P.N. 073-161-02 (PROPERTY). The house would be completed within about one year of the date of the loan.  BAAS would then promptly sell PROPERTY and plaintiff's money would be returned to her, plus interest at a rate of 10% a year.

9.     After receiving the $200,000 loan from plaintiff, BAAS breached the agreement by not building the house as promised.

10.     In 2016, plaintiff asked BAAS, through its agent, BONNER, to return her $200,000 loan. BAAS refused to do so.

11.     Upon information and belief, plaintiff alleges that BAAS used plaintiff's money for different purposes than building the house, as promised.

12.     Plaintiff has performed all obligations owed to BAAS.

13.     Plaintiff suffered damages proximately caused by BAAS's breach of the agreement, including loss of the $200,000 loaned, plus interest of 10% per year since the date of the loan.

Case: 20-05008   Doc# 1   Filed: 02/13/20   Entered: 02/13/20 14:01:36   Page 7 of 52

## SECOND CAUSE OF ACTION
### Count One - Fraud - Intentional Misrepresentation by Steven E. Bonner

14.     Plaintiff repeats each and every allegation stated in the preceding paragraphs as if set forth herein at length.

15.     At all relevant times stated herein, BONNER was a licensed securities broker. Prior to 8/29/14, BONNER advised plaintiff regarding securities and traded them on her behalf.

16.     BONNER defrauded plaintiff by making the representations of material fact in paragraphs 17 through 26, below.

17.     On or about 8/29/14, BONNER advised plaintiff to invest in the development and sale of PROPERTY, which he stated BAAS owned.

18.     BONNER also told plaintiff that he owned and managed BAAS.

19.     On or about 8/29/14, BONNER made the statements set forth in paragraph 8 to plaintiff.

20.     On 8/29/14, BONNER gave plaintiff a document entitled "Private Placement Offering" (OFFER) by BAAS, attached hereto as EXHIBIT 1, which stated that BAAS was in the business of buying and developing real estate for sale and was seeking investors. It stated that BONNER managed the company.

21.     The OFFER also stated that plaintiff would invest $400,000 for the development of PROPERTY and receive $440,000 at the time of its sale.

22.     On 8/29/14, in reliance upon the above-described statements by BONNER and those in the OFFER, plaintiff signed the OFFER, as requested by BONNER, and gave BONNER two checks totaling $400,000 made payable to BAAS for the development and sale of PROPERTY.

23.     At plaintiff's request, BONNER returned one of the two checks.

24.     The other check for $200,000 was cashed.

25.     The OFFER indicated that investments would be held in the Heritage Bank of Commerce.

26.     After making her investment, plaintiff repeatedly asked BONNER about the status of PROPERTY. In response, BONNER always stated that work on PROPERTY was continuing.

27.     The representations made in paragraph 8 are false. The truth is:

  a)  plaintiff's investment was not used to build a house on the subject lot, as agreed,

b) upon information and belief, no improvements have been made to PROPERTY, and

c) plaintiff's investment was spent by BAAS for other purposes.

28.    BONNER has refused to return any of the plaintiff's investment or accrued interest upon request after he failed to build the home on PROPERTY.

29.    The representations made in paragraph 25 are false.  Upon information and belief, plaintiff alleges that her investment to build a house on PROPERTY was not maintained in an account at Heritage Bank of Commerce, but was spent for unrelated purposes.

30.    When BONNER made these false representations, he knew they were false.

31.    BONNER made the representations with the intent to defraud and induce plaintiff to act as described in paragraph 32.  At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true.

32.    In justifiable reliance upon defendant BONNER's representations, plaintiff gave BONNER a check for $200,000 payable to BAAS to improve and sell PROPERTY as BONNER had promised.

33.    Because of plaintiff's reliance upon BONNER's conduct, plaintiff has lost $200,000, plus 10% annual interest from the date of the plaintiff's investment.  BONNER has refused to return plaintiff's investment and pay plaintiff interest due.  BONNER has spent plaintiff's investment for purposes other than building a house, as promised.

Count Two -
Fraud - Intentional Misrepresentation by Bay Area Acquisitions and Sales, L.L.C.

34.    Plaintiff repeats each and every allegation stated in the preceding paragraphs as if set forth herein at length.

35.    At all times described herein, BONNER was a member, manager and agent of BAAS, and in doing the things herein alleged was acting in the course and scope of that agency.

36.    Due to BAAS's conduct through its agent, BONNER, plaintiff has lost $200,000, plus 10% annual interest from the date of plaintiff's investment.

Count Three
Fraud - Intentional Misrepresentation by Principal Securities, Inc.

37.    Plaintiff repeats each and every allegation stated in the preceding paragraphs as if set forth herein at length.

Johnston V. Bonner, et al.          SECOND AMENDED COMPLAINT          4

38.     Prior to 1/30/14, plaintiff sought professional investment advice from BONNER concerning her pending inheritance after the death of her father.

39.     In response, BONNER advised plaintiff to invest the bulk of her inheritance with PRINCIPAL, where he worked as a broker.

40.     At all times stated herein, defendant PRINCIPAL was a duly licensed securities broker-dealer offering brokerage and investment adviser services in California.

41.     On or about 1/30/14, plaintiff became a customer of PRINCIPAL.  At that time, BONNER obtained plaintiff's signature on a written agreement (AGREEMENT) stating PRINCIPAL's offer to plaintiff of a securities brokerage account and that BONNER is PRINCIPAL's registered representative.   A copy of the AGREEMENT is attached as EXHIBIT 2 and made a part of this Second Amended Complaint by reference.

42.     BONNER signed the AGREEMENT on PRINCIPAL's behalf.

43.     As PRINCIPAL's registered representative, BONNER was the agent of PRINCIPAL, and in doing the things alleged in paragraphs 41, 42 and 44 through 48 below, was acting in the course and scope of that agency.

44.     On or about 2/10/14, BONNER invested $700,000, the bulk of plaintiff's inheritance, in a portfolio of investments which BONNER selected and purchased on plaintiff's behalf.

45.     On or about 8/20/14, BONNER caused the sale of over $600,000 of plaintiff's securities in her PRINCIPAL account.

46.     On or about 8/21/14 and 8/22/14, BONNER caused two checks totaling $200,000 to be issued from plaintiff's PRINCIPAL account.

47.     On or about 8/22/14, BONNER then caused the remaining proceeds from the sale of plaintiff's securities to be placed in her cash account with PRINCIPAL.

48.     On or about 9/3/14, BONNER caused an additional check for $200,000 to be issued from plaintiff's PRINCIPAL cash account.

49.     Upon information and belief, plaintiff alleges that BONNER's actions as stated in paragraphs 41, 42 and 44 through 48, were performed with the knowledge and expectation

Johnston V. Bonner, et al.          SECOND AMENDED COMPLAINT          5

1 that the above-described sums disbursed from plaintiff's PRINCIPAL account would be
2 fraudulently transferred to BAAS, as described in the first and second causes of action, herein.
3 50. PRINCIPAL and BONNER, its agent, as securities brokers, owed plaintiff, their customer,
4 a fiduciary duty of care.
5 51. This fiduciary duty of care includes a duty to avoid conflicts of interest and to use the
6 utmost care, integrity, honesty and loyalty in dealings with a client. The duty requires the
7 disclosure of facts necessary for a client to make appropriate decisions regarding the
8 management of her account.
9 52. Although BONNER knew that the purpose of the disbursements from plaintiff's account
10 was fraudulent and that his actions were opposed to her interests, he intentionally and
11 fraudulently failed to disclose those facts to her.
12 53. Due to PRINCIPAL's conduct through its agent, BONNER, plaintiff lost $200,000, plus
13 10% annual interest from the date of plaintiff's investment.

THIRD CAUSE OF ACTION-
Fraud - Negligent Misrepresentation
Count One – Steven E. Bonner

16 54. Plaintiff repeats each and every allegation stated in paragraphs 1 - 29, 31, 32 and 33, as
17 if set forth herein at length.
18 55. When BONNER made the representations of fact described in the above paragraphs, he
19 had no reasonable ground for believing the representations were true.
20 56. Due to BONNER's conduct, plaintiff has lost $200,000, plus 10% annual interest from the
21 date of plaintiff's investment.

Count Two
Fraud - Negligent Misrepresentation by Bay Area Acquisitions and Sales, L.L.C.

24 57. Plaintiff repeats each and every allegation stated in paragraphs 1 - 29, 31, 32 and 33, as
25 if set forth herein at length.
26 58. When BAAS, through its agent BONNER, made the representations of fact described in
27 the above paragraphs, it had no reasonable ground for believing the representations were true.
28

Johnston V. Bonner, et al.          SECOND AMENDED COMPLAINT          6

59. Due to BAAS's conduct through its agent, BONNER, plaintiff has lost $200,000, plus 10% annual interest from the date of plaintiff's investment.

Count Three<br/>Fraud - Negligent Misrepresentation by Principal Securities, Inc.

60. Plaintiff repeats each and every allegation stated in paragraphs 1 - 29, 31-51 and 53, as if set forth herein at length.

61. PRINCIPAL, through its agent, BONNER, knew that the purpose of the above-described disbursements from plaintiff's account was fraudulent and that PRINCIPAL'S actions were opposed to her interests, and had no reasonable grounds to fail to disclose those facts to her.

62. Due to PRINCIPAL's conduct through its agent, BONNER, plaintiff lost $200,000, plus 10% annual interest from the date of plaintiff's investment.

FOURTH CAUSE OF ACTION<br/>Count One -<br/>Fraud - Promise Without Intent To Perform by Steven E. Bonner

63. Plaintiff repeats each and every allegation stated in paragraphs 1-29, 31, 32 and 33 as if set forth herein at length.

64. At all times described herein, BONNER was plaintiff's investment adviser and securities broker and owed her a fiduciary duty of care as his client.

65. BONNER, on or about 8/29/14, defrauded plaintiff by making promises about material matters described in paragraph 8, above, without any intention of performing them.

66. BONNER's promises were made with the intent to defraud and induce plaintiff to rely upon them and to act as described in paragraph 32, above. At the time the plaintiff acted, plaintiff was unaware of defendant's intention not to perform the promises. Plaintiff acted in justifiable reliance upon the promises.

67. Because of plaintiff's reliance upon BONNER's conduct, plaintiff lost $200,000, plus 10% annual interest from the date of the plaintiff's investment.

Count Two<br/>Fraud - Promise Without Intent To Perform by Bay Area Acquisitions and Sales, L.L.C.

68. Plaintiff repeats each and every allegation stated in paragraphs 1-29, 31, 32 and 33, as if set forth herein at length.

Johnston V. Bonner, et al.      SECOND AMENDED COMPLAINT      7

69.    Plaintiff alleges that on or about 8/29/14, BAAS, acting by and through its agent, BONNER, defrauded plaintiff by making promises about material matters without any intention of performing them, as described in paragraph 8, above.

70.    BAAS's promises were made by and through its agent, BONNER, with the intent to defraud and induce plaintiff to rely upon them and to act as stated in paragraph 32, above. At the time plaintiff acted, she was unaware of BAAS's intention not to perform the promises. Plaintiff acted in justifiable reliance upon the promises.

71.    Due to plaintiff's reasonable reliance upon the conduct of BAAS, through its agent, BONNER, plaintiff lost $200,000, plus 10% annual interest from 8/29/14 to the present.

FIFTH CAUSE OF ACTION
Violation of Penal Code Section 496

72.    Plaintiff re-alleges all the allegations contained in each and every preceding paragraph and incorporates them herein as if set forth at length.

73.    BONNER knowingly made false statements to plaintiff, fraudulently inducing her to lend $200,000 to BAAS.

74.    BONNER knowingly concealed the fact that no improvements were made to PROPERTY, contrary to plaintiff's agreement with BAAS.

75.    BONNER knowingly concealed the fact that plaintiff's loan was used for purposes not authorized by the agreement between plaintiff and BAAS.

76.    After performing the acts described in paragraphs 25 - 33, BONNER refused to return plaintiff's loan to her upon request.

77.    BONNER's acts described in paragraphs 25 - 33 violate Pen. C. Section 496(a), providing for a criminal sanction for any person who aids in concealing or withholding any property from its owner, knowing the property to be stolen or obtained in any manner constituting theft.

SIXTH CAUSE OF ACTION
Alter Ego liability of BONNER and Johanna Bonner for the obligations of defendant BAAS
Corp. C. Section 17703.04(b) and (c)

78.    Plaintiff restates each and every allegation contained in paragraphs 1 through 33 and incorporates them herein as if set forth at length.

Johnston V. Bonner, et al.        SECOND AMENDED COMPLAINT                    8

79. At all times stated herein, BONNER was a member of BAAS.

80. At all times stated herein, Johanna Bonner was the Chief Executive Officer of BAAS.

81. At all times stated herein, Johanna Bonner was the wife of defendant BONNER.

82. At all times stated herein, there was a unity of interest and ownership between BONNER, Johanna Bonner and BAAS such that any individuality and separateness between BONNER, Johanna Bonner and BAAS has ceased and BAAS is the alter ego of BONNER and Johanna Bonner, as follows:

   a) At all times stated herein, BONNER was a manager and member of BAAS.

   b) BONNER's role as manager of BAAS has been withheld from the California Office of the Secretary of State since 9/5/13, when BAAS sought authorization to operate as a limited liability company by filing a "Statement of Information" which improperly omitted that fact.

   c) Upon information and belief, plaintiff alleges that the signatures of Johanna Bonner as the Chief Executive Officer of BAAS on company documents, including the "Statement of Information" filed with the Office of the Secretary of State and other documents were forged.

   d) Upon information and belief, plaintiff alleges that Johanna Bonner's signature on checks written on the bank account of BAAS and other documents were forged by BONNER.

   e) Upon information and belief, plaintiff alleges that checks written on BAAS's bank account were signed by BONNER and other individuals not authorized to sign on that account.

   f) Upon information and belief, plaintiff alleges that defendants BONNER and Johanna Bonner comingled funds of BAAS with their own personal funds.

   g) Upon information and belief, plaintiff alleges that defendants BONNER and Johanna Bonner comingled funds of BAAS with the funds of other companies they individually or jointly owned, managed or controlled, including Ground Zero Construction Co., Inc. and A.F.N., Inc.

   h) Upon information and belief, plaintiff alleges that BAAS failed to maintain records necessary to determine its financial status or to distinguish its assets and liabilities from those of other companies, including Ground Zero Construction Co., Inc. and A.F.N., Inc. and the personal assets of BONNER and Johanna Bonner.

Johnston v. Bonner, et al.      SECOND AMENDED COMPLAINT      9

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 14 of 52

i) Upon information and belief, plaintiff alleges that BAAS used the same office, had the same employees and agents, including Jacqueline Lopez-Flores, Cindy Hackett and Johanna Bonner and attorney, James B. Little, that BONNER and Johanna Bonner used for other companies they owned, managed or controlled, including Ground Zero Construction Co., Inc., A.F.N., Inc., and themselves, personally.

j) Upon information and belief, plaintiff alleges that BAAS failed to maintain an arm's length relationship between related entities and businesses and the personal assets and liabilities of BONNER and Johanna Bonner.

k) Upon information and belief, plaintiff alleges that BAAS concealed and misrepresented the identity of the responsible ownership, management and financial interest or personal business activities of BONNER.

83.    Adherence to the fiction of the separate existence of BAAS, a limited liability company, as an entity distinct from BONNER and Johanna Bonner would permit an abuse of the limited liability company privilege and would sanction fraud and promote injustice in that recovery of funds fraudulently taken from plaintiff by BAAS, as stated herein, may otherwise be denied. Johanna Bonner, as an officer of BAAS, and BONNER, as manager and agent of BAAS, may otherwise escape liability for breach of contract by BAAS and the fraudulent taking of plaintiff's money, as described above.

SEVENTH CAUSE OF ACTION
Imposition of Constructive Trust on Real Property obtained through Fraud
and Preliminary Injunction - Fraud, CC Section 2224

84.    Plaintiff restates each and every allegation contained in the preceding paragraphs and incorporates them herein as if set forth at length.

85.    BONNER, individually, and as agent for BAAS, and plaintiff agreed that plaintiff would loan $200,000 to BAAS to build a house on PROPERTY it owned.  Once the house was complete, the property would be sold and plaintiff's $200,000 would be returned to her, plus interest.

86.    But, the verified Answers of BONNER and BAAS to the First Amended Complaint deny that they promised to use the $200,000 received from plaintiff to build a house on PROPERTY

Johnston v. Bonner, et al.          SECOND AMENDED COMPLAINT          10

(BAAS Answer par. 34, BONNER Answer par. 25, 42). Rather, BONNER and BAAS state that the money was used to buy PROPERTY (BONNER Answer par. 25, 42, BAAS Answer par. 5, 25).

87.   Further, BONNER and BAAS state that they did not agree to pay any interest on the money provided by plaintiff (BONNER Answer par. 11, BAAS Answer par. 11).

88.   BONNER AND BAAS state that no payment of principal or interest is due plaintiff because she remains invested in PROPERTY (BONNER Answer par. 25, BAAS Answer par. 6.)

89.   By stating that they did not agree to pay any interest and asserting that plaintiff's money was a continuing investment used by BAAS to buy PROPERTY, BONNER and BAAS, in effect, assert that plaintiff has an equitable ownership interest in PROPERTY.

90.   Plaintiff would not have given BAAS $200,000 had she known that BAAS did not own PROPERTY.

91.   By virtue of plaintiff's equitable ownership interest in PROPERTY as stated in paragraph 89, and the fraudulent acts of BAAS and BONNER as asserted in paragraphs 14-71, BAAS holds PROPERTY in a constructive trust for plaintiff.

92.   BAAS has placed PROPERTY on the market for sale without plaintiff's authorization.

EIGHTH CAUSE OF ACTION
Negligence by PRINCIPAL

93.   Plaintiff restates each and every allegation contained in the preceding paragraphs and incorporates them herein as if set forth at length.

94.   At all times stated herein, defendant PRINCIPAL was a duly licensed securities broker-dealer offering brokerage and investment adviser services in California.

95.   Upon information and belief, plaintiff alleges that in or about March, 2010, PRINCIPAL hired BONNER as a securities broker and as its registered representative.

96.   In the four years prior to March, 2010, BONNER had been found liable in California civil court cases for fraud, deceit, conversion, misappropriation, breach of fiduciary duty and breach of warranty of authority related to his business activities (see Santa Clara Superior Court cases no. 2005-1-CV-040674 and 2007-1-CV-079412.)

97.     One of the above-described judgments against BONNER upheld an award of damages of $1,313,243.10 for conversion and breach of fiduciary duty.

98.     Upon information and belief, plaintiff alleges that BONNER never paid anything towards any of the above-described judgments.  Instead, he bought a yacht and left the country on a years-long, world sailing tour.

99.     On 2/26/09, BONNER filed for bankruptcy and his judgment debts were discharged.

100.    After PRINCIPAL hired BONNER in 2010, other actions for wrongful business conduct were filed against him, including a suit for breach of fiduciary duty, conversion and unjust enrichment (Santa Clara Superior Court case no. 2014-CV-265982, which is currently in trial.)

101.    On 12/5/11, the California Department of Real Estate found that BONNER conducted business activities without a license in violation of the California Business and Professions Code and issued a cease and desist order against him.

102.    The claims, suits, judgments and orders against BONNER described in paragraphs 96-101 were of public record at the time plaintiff was defrauded by BONNER, as alleged herein.

103.    PRINCIPAL owed plaintiff a duty to use reasonable care to protect plaintiff from harm resulting from its activities as plaintiff's broker-dealer and the acts of its agents and brokers. This duty of reasonable care includes a duty to follow applicable rules, regulations and recommendations regarding background investigations, verifications, supervision, retention and employment of brokers as stated by the Securities and Exchange Commission, the Financial Industry Regulatory Authority (FINRA), the National Association of Security Dealers (NASD) and other entities overseeing the operations of broker-dealers.

104.    PRINCIPAL breached its duty to use reasonable care to protect plaintiff from harm by failing to act in accord with appropriate standards, including the following failures to act:

a)      failure to appropriately investigate and verify BONNER's background, including his character, business reputation and activities prior to his hiring by PRINCIPAL;

b)      failure to appropriately investigate, monitor and verify BONNER's adherence to applicable standards, rules and recommendations regarding the reporting of investment and other activities and events while employed by PRINCIPAL;

Johnston v. Bonner, et al.          SECOND AMENDED COMPLAINT          12

c)      failure to appropriately investigate, monitor and verify that BONNER's conduct while employed by PRINCIPAL complied with applicable standards, rules and recommendations promulgated by regulatory authorities;

d)      failure to take appropriate action once PRINCIPAL became aware or should have become aware of facts which indicate that plaintiff's interests may be jeopardized by BONNER's activities as plaintiff's broker.

e)      failure to notify plaintiff of facts which indicate that plaintiff's financial interests may be jeopardized by BONNER's activities as plaintiff's broker.

105.    Applicable standards of conduct of PRINCIPAL were violated by its hiring and employing BONNER as a broker while it knew or should have known of the information stated in paragraphs 49, 52 and 96-101.

106.    Plaintiff would not have invested in BAAS had she known of any of the events described in paragraphs 49, 52 and 96-101, above.

107.    Plaintiff would not have invested in BAAS had PRINCIPAL used reasonable care to protect plaintiff from harm, complied with applicable standards of care described in paragraphs 103 and 104 and not hired or employed BONNER as its broker.

108.    As a result of PRINCIPAL's breach of its duty to use reasonable care to protect plaintiff from harm resulting from its activities as plaintiff's broker-dealer, and the acts of its agents and brokers, plaintiff has been damaged in that she lost $200,000 loaned to BAAS, plus interest on that sum at a rate of 10% per year from 8/29/14 to the present.

NINTH CAUSE OF ACTION
Count One - Breach of Fiduciary Duty by broker, BONNER

109.    Plaintiff restates each and every allegation contained in the preceding paragraphs and incorporates them herein as if set forth at length.

110.    As plaintiff's investment adviser and securities broker, BONNER owed plaintiff a fiduciary duty of care as his client. This duty includes a duty to use due care and due diligence, including a duty to follow applicable rules, regulations and recommendations of the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), the National Association of Security Dealers (NASD) and other entities overseeing the operations of

Johnston v. Bonner, et al.        SECOND AMENDED COMPLAINT        13

brokers. This fiduciary duty of care also includes a duty to avoid conflicts of interest, and to use the utmost care, integrity, honesty and loyalty in dealings with his client.

111. BONNER breached his fiduciary duty to plaintiff in the following manner:

a)      by the acts and statements alleged to be fraudulent or in breach of contract in paragraphs 9-33 and 38-52 of this Second Amended Complaint;

b)      by using information obtained from plaintiff while acting as her broker and investment adviser for his own benefit and against her interests;

c)      by failing to disclose the information in paragraphs 38-52 and 96-101 to plaintiff prior to 8/29/14;

d)      by not giving the information in paragraphs 9-33 and 96-101 to FINRA and PRINCIPAL.

112. As a result of BONNER's breach of his fiduciary duty, plaintiff has been damaged in that she lost $200,000 she loaned to BAAS, plus interest on that sum at a rate of 10% per year from 8/29/14 to the present.

Count Two

Breach of Fiduciary Duty by broker-dealer, PRINCIPAL

113. Plaintiff restates each and every allegation contained in the preceding paragraphs and incorporates them herein as if set forth at length.

114. PRINCIPAL owed plaintiff a fiduciary duty of care as its client, requiring it to use due care and diligence to protect plaintiff from harm resulting from its acts as plaintiff's broker-dealer and the acts of its agents. PRINCIPAL's fiduciary duty includes a duty to avoid conflicts of interest, a duty to disclose material facts pertaining to the trustworthiness of its agent doing business with plaintiff and a duty to use the utmost care, integrity, honesty and loyalty in dealings with plaintiff.

115. PRINCIPAL's fiduciary duty to plaintiff was breached by its failure to disclose facts described in paragraphs 44-49 to plaintiff.

116. PRINCIPAL's fiduciary duty to plaintiff includes a duty to follow applicable rules, regulations and recommendations regarding background investigations, verifications, supervision, retention and employment of brokers as stated by the Securities and Exchange

Johnston v. Bonner, et al.          SECOND AMENDED COMPLAINT          14

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 19 of 52

Commission, the Financial Industry Regulatory Authority (FINRA), the National Association of Security Dealers (NASD) and other entities overseeing the operations of broker-dealers.

117. PRINCIPAL breached its duty to use due care to protect plaintiff from harm by the following failures to comply with the regulatory standards described in paragraph 116:

a) failure to appropriately investigate and verify BONNER's background, including his character, business reputation and activities prior to his hiring by PRINCIPAL;

b) failure to appropriately investigate, monitor and verify BONNER's adherence to applicable standards, rules and recommendations regarding the reporting of investment activities and other activities and events while employed by PRINCIPAL;

c) failure to appropriately investigate, monitor and verify that BONNER's conduct while employed by PRINCIPAL complied with applicable standards, rules and recommendations promulgated by the regulatory authorities of the securities industry;

d) failure to take appropriate action once PRINCIPAL became aware of facts which indicate that plaintiff's interests may be jeopardized by the potential of improper activities by BONNER, including his history of claims and liability for fraud, conversion, breach of fiduciary duty, misappropriation, deceit, and breach of warranty of authority related to his business activities.

e) failure to notify plaintiff of facts which reasonably indicate that plaintiff's interests may be jeopardized by the potential of improper activities by BONNER.

118. Applicable standards of conduct of PRINCIPAL were violated by its hiring and employing BONNER as its registered representative and broker when it knew or should have known of the information stated in paragraphs 44-49 and 96-101.

119. Plaintiff would not have invested in BAAS had she known of any of the events described in paragraphs 44-49 and 96-101, above.

120. Upon information and belief, plaintiff alleges that prior to 8/29/14, an officer, director or managing agent of PRINCIPAL knew of facts described in paragraphs 46-49 and 96, 97, 100 and 101, or otherwise knew that BONNER was unfit to be an investment advisor, securities broker and registered representative for PRINCIPAL.

121.    Upon information and belief, plaintiff alleges that in spite of that knowledge, PRINCIPAL employed BONNER as its agent, providing securities broker services and investment advice in conscious disregard of plaintiff's rights and financial interests.

122.    Plaintiff would not have invested in BAAS had PRINCIPAL used due care to protect plaintiff from harm by complying with the applicable standard of care described in paragraphs 114 and 116 and not hired or employed BONNER as its agent.

123.    Had PRINCIPAL complied with its fiduciary duty of care towards plaintiff, BONNER would not have obtained information from plaintiff which he then used to obtain plaintiff's investment in BAAS for his own benefit and against her interests.

124.    As a result of PRINCIPAL's breach of its fiduciary duty to use due care to protect plaintiff from harm as described above, plaintiff has been damaged in that she lost $200,000 loaned to BAAS, plus interest on that sum at a rate of 10% per year from 8/29/14 to the present.

Count Three
Breach of Fiduciary Duty by BAAS Members, Managers and Board of Advisors

125.    Plaintiff restates each and every allegation contained in the preceding paragraphs and incorporates them herein as if set forth at length.

126.    At all relevant times stated herein, defendants Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz were members in BAAS (pg. 9, 10, OFFER,) members of the BAAS Board of Advisors and managers of BAAS (pg. 11, OFFER.)

127.    At all relevant times, BONNER was a member and manager of BAAS (pg. 10, OFFER.)

128.    Defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz, as members of BAAS, jointly and severally owed a fiduciary duty of due care to plaintiff, an investor. This duty includes a duty to act in good faith to determine whether BAAS was properly operating for the benefit of plaintiff and to correct improper activities.

129.    Defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz, as members of the BAAS Board of Advisors and managers of BAAS,

Johnston V. Bonner, et al.          SECOND AMENDED COMPLAINT          16

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 21 of 52

owed plaintiff, an investor in BAAS, a fiduciary duty of due care to oversee and manage BAAS's operations so that it is in compliance with its stated procedures and objectives.

131.    Upon information and belief, plaintiff alleges that defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz breached their fiduciary duty of due care owed to plaintiff through the following management failures:

a)    they did not act to determine whether "Investor Member Interests" were issued to plaintiff or to seek their issuance in compliance with the procedures and objectives of BAAS as stated on pages 4 and 8 of OFFER;

b)    they did not act to determine whether Subscription and Operating Agreements were issued and signed by plaintiff, or to seek her execution of these documents in compliance with the procedures of BAAS as stated on pages 5, 7 and 8 of OFFER prior to her investment;

c)    they did not act to determine whether plaintiff stated in writing in the Subscription Agreement that she met "Investor Suitability Standards", or to seek this writing in compliance with procedures and objectives of BAAS, as stated on pages 5, 7 and 8 of OFFER prior to her investment;

d)    they failed to oversee, advise, review and manage BAAS activities to protect plaintiff's investment from misappropriation and fraud and to verify that BAAS is in compliance with its stated procedures and functions;

e)    they failed to review the records of BAAS or by other means determine the existence of plaintiff's $200,000 investment, how that money was obtained and how it was being used;

f)    they failed to develop procedures to minimize the potential of the loss of investor funds through fraud or misappropriation;

g)    they failed to remedy the misappropriation of plaintiff's $200,000 by BAAS.

132.    Upon information and belief, plaintiff alleges that prior to 8/29/14, defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz knew of facts stated in paragraphs 96-101 or otherwise knew that BONNER was unfit to be the managing member of BAAS, responsible for the finances of its members and investors.

133.    Upon information and belief, plaintiff alleges that in spite of that knowledge, defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz failed to act to prevent BONNER's employment as the managing member of BAAS in conscious disregard of plaintiff's rights and financial interests as an investor in BAAS.

134.    As a result of the breach of their fiduciary duty to protect plaintiff from harm, defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz, as members and managers of BAAS and the BAAS Board of Directors damaged plaintiff in that she lost $200,000 loaned to BAAS, plus interest on that sum at a rate of 10% per year from 8/29/14 to the present.

WHEREFORE, plaintiff prays for judgment as follows:

1.    as alleged in the first cause of action, a finding that defendant BAAS breached its contract with plaintiff, and a resulting award of damages against BAAS and for the plaintiff of $200,000, plus interest on that sum of 10% per year from 8/29/14 to the present;

2.    as alleged in the second and third causes of action, a finding that defendants BONNER, BAAS and PRINCIPAL defrauded plaintiff, and a resulting award of damages against BONNER, BAAS and PRINCIPAL, jointly and severally, and for the plaintiff of $200,000, plus interest of 10% per year from 8/29/14 to the present, and

exemplary damages are awarded against defendants BONNER, BAAS and PRINCIPAL, and for the plaintiff in an amount determined by the trier of fact;

3.    as alleged in the fourth cause of action, a finding that defendants BONNER and BAAS defrauded plaintiff, and a resulting award of damages against BONNER and BAAS, jointly and severally, and for the plaintiff of $200,000, plus interest of 10% per year from 8/29/14 to the present, and

exemplary damages are awarded against defendants BONNER and BAAS, and for the plaintiff in an amount determined by the trier of fact;

4.     as stated in the fifth cause of action, a finding that defendant BONNER violated Pen. C.

Section 496(c), resulting in treble damages ($600,000 plus 10% annual interest from 8/29/14 to

the present) plus reasonable attorney's fees;

5.     as alleged in the sixth cause of action, a declaratory judgment stating as follows:

     a)     that alter ego liability exists between BAAS, BONNER and Johanna Bonner, and

     b)     that BONNER and Johanna Bonner are jointly and severally liable for any money

judgment found by this court against BAAS;

6.     as alleged in the seventh cause of action, a declaratory judgment and preliminary

injunction stating as follows:

     a).     defendant BAAS holds PROPERTY as a constructive trustee for plaintiff's benefit,

     b)     defendants BONNER, Johanna Bonner and BAAS must maintain PROPERTY in its

current state,

     c)     defendants BONNER, Johanna Bonner and BAAS. are enjoined from

encumbering, alienating, occupying, causing waste or otherwise impairing PROPERTY in any

manner.

7.     as alleged in the eighth cause of action, a finding that defendant PRINCIPAL negligently

breached its obligation of reasonable care towards plaintiff, causing damages of $200,000, plus

interest at an annual rate of 10% from 8/29/14 to the present, and

     exemplary damages are awarded against PRINCIPAL and for the plaintiff in an amount

determined by the trier of fact;

8.     as stated in the Ninth cause of action, the following findings and awards of damages:

a)     a finding that defendant BONNER breached his fiduciary of due care towards plaintiff,

causing damage to plaintiff, and a resulting award  of damages against PRINCIPAL and for

plaintiff of $200,000, plus interest of 10% per year from 8/29/14 to the present, and

     exemplary damages are awarded against PRINCIPAL and for the plaintiff in an amount

determined by the trier of fact;

b)  a finding that defendant PRINCIPAL breached his fiduciary of due care towards plaintiff, causing damage to plaintiff, and a resulting award of damages against PRINCIPAL and for plaintiff of $200,000, plus interest at a rate of 10% per year from 8/29/14 to the present, and

exemplary damages are awarded against PRINCIPAL and for the plaintiff in an amount determined by the trier of fact;

c)  a finding that defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz breached their fiduciary duty of due care towards plaintiff, causing damage to plaintiff, and a resulting award of damages against these defendants and for plaintiff of $200,000, plus interest on that sum of 10% per year from 8/29/14 to the present, and

exemplary damages are awarded against defendants BONNER, Johanna Bonner, Roger D. Wintle, Susan Weber, Christine Frazier, Gabriel Perez and Ray Diaz and for the plaintiff in an amount determined by the trier of fact;

9.  for costs of suit herein incurred, and

10.  for such other and further relief as the court may deem proper.

Date: August 14, 2017

_____

Jack Hain, attorney for plaintiff, Jacklyn A. Johnston

Johnston V. Bonner, et al.        SECOND AMENDED COMPLAINT        20

# BAY AREA ACQUISTIONS & SALES, LLC

## PRIVATE PLACEMENT OFFERING
### August 29, 2014

# COMPANY CONFIDENTIAL

Copy No:   207

Name:   Jacklyn Johnston

Date:   August 29, 2014

Contents:

**I CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM** ........................................................ 4

The Offering .................................................................................................................. 4
Sale of Unregistered Securities ............................................................................... 6
Executive Summary of the Offering ......................................................................... 7
Investor Suitability Standards .................................................................................. 9
Description of Capital Stock..................................................................................... 10
Use of Proceeds ........................................................................................................ 10
Determination of the Offering Price and Restrictions on Transfer ...................... 11
Management of the Company .................................................................................. 17
directors...................................................................................................................
principal Shareholders ...................................... **Error! Bookmark not defined.**
Documents Available for Inspection ....................................................................... 14

**II MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND
RESULTS OF OPERATIONS** ............................................................................................. 14

Introduction ............................................................................................................... 14
EXECUTIVE SUMMARY OF BUSINESS PLAN .............................................................
OBJECTIVES.............................................................................................................20
MISSION STATEMENT.............................................................................................21
KEYS TO SUCCESS...................................................................................................22
CURRENT OWNERSHIP OF STOCK........................................................................23
BUSINESS PLAN/THE CORPORATION...................................................................24
OFFICE LOCATIONS AND PLACEMENT................................................................24
OFFICE ENVIRONMENT AND CONFIGURATION.................................................25
WEB-BASED SOFTWARE TECHNOLOGY...............................................................26
MARKET ANALYSIS/THE INDUSTRY.....................................................................26
THE MARKET & MARKET NEEDS...........................................................................28
MARKET SEGMENTATION - THE AGENT...............................................................28
TARGET MARKET SEGMENT STRATEGY..............................................................28
RECRUITING.............................................................................................................29
SERVICE DESCRIPTION SUMMARY/AGENT ASSISTANTS...................................30
LEAD GENERATION.................................................................................................30
AGENT COMPENSATION & BENEFITS...................................................................30
COMPETITIVE EDGE................................................................................................31
PRIMARY COMPETITORS........................................................................................32
GROWTH ON PRINCIPLES OF REPLICATION.......................................................32
THE FLAGSHIP OFFICE - SAN JOSE CALIFORNIA..............................................33
FINANCIAL PROJECTIONS AND LIQUIDITY.........................................................

**III STATEMENT OF RISK**...................................................................... .... 17
Forward Looking Statements ...................................................................................17
Risk, Trends and Uncertainties................................................................................
DEVELOPMENT STAGE COMPANY.........................................................................34
LACK OF PUBLIC MARKET.....................................................................................34
FLUCUATION OF OPERATING RESULTS...............................................................34
DEPENDENCE UPON THE HOUSING AND LENDING INDUSTRY.........................34
RISKS ASSOCIATED WITH START UP COMPANY..................................................35
STOCK PRICE VOLATILITY.....................................................................................35
FAILURE TO MAINTAIN KEY PERSONNEL:...........................................................35

**V STATE SECURITY REQUIREMENTS** ....................................................................35

**VI PROSPECTIVE PURCHASER QUESTIONNAIRE**........................................................44

(For Accredited Investors under Regulation D)...................................................................... 27
(For Non-Accredited Investors under Regulation D)............................................................... 32

**VII BUSINESS PLAN AND SPREADSHEETS**...................................................................**56**

# I  Confidential Private Placement Memorandum

## *The Offering*

BAY AREA ACQUISTIONS & SALES, LLC, a California limited liability company in formation ( the "Company") hereby offers Investor Member Interests ("Interests") in the Company in the form of membership ownership interests in the Company.

Before this offering, the Interests have not been traded nor has there been, or will be, a market for them.  The Interests have not been approved for listing and can only be sold pursuant to an exemption under the Securities Act of 1933, as amended (the "Act").

This Confidential Private Placement Memorandum (the "Memorandum") has been prepared solely for informational purposes from data and information deemed reliable by the Company, and supersedes all information, written or oral, which previously may have been furnished.

**The Interests offered hereby involve a material degree of risk.  See "Risk Factors". These securities should be purchased by person who can afford to lose some or all of their entire investment.**

## *Sale of Unregistered Securities*

THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER CALIFORNIA STATE SECURITIES LAWS, AND ARE BEING OFFERED IN RELIANCE UPON SECTION 3(b) AND 4(2) OF THE SECURITIES ACT OF 1933 AND RULE 504 OF REGULATION D PROMULGATED THEREUNDER FOR SMALL OFFERINGS.  NO REGISTRATION STATEMENT OR APPLICATION TO REGISTER THESE SECURITIES HAS BEEN OR WILL BE FILED WITH THE COMMISSION OR ANY STATE SECURITIES COMMISSION.  THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THERE IS NO PUBLIC MARKET FOR THE INTERESTS OF COMPANY AND IT IS NOT EXPECTED THAT THERE WILL BE A MARKET IN THE SHORT TERM FOR THE RESALE OF THE SECURITIES OFFERED HEREBY.

THE SALE OF THE SECURITIES WHICH ARE THE SUBJECT OF THIS MEMORANDUM HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE

CONSIDERATION THEREFORE PRIOR TO SUCH QUALIFICATION OR OBTAINING AN EXEMPTION FROM SUCH QUALIFICATION IS UNLAWFUL. THE RIGHTS OF ALL PARTIES TO THIS TRANSACTION ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED OR UPON RELIANCE UPON AN EXEMPTION FROM SUCH QUALIFICATION REQUIREMENTS.

THE SECURITIES OFFERED HEREBY WILL BE SOLD SUBJECT TO THE PROVISIONS OF A MEMBERSHIP SUBSCRIPTION AGREEMENT (THE "SUBSCRIPTION AGREEMENT") CONTAINING REPRESENTATIONS, WARRANTIES, TERMS, AND CONDITIONS. ANY INVESTMENT IN THE SECURITIES OFFERED HEREBY SHOULD BE MADE ONLY AFTER A COMPLETE AND THOROUGH REVIEW OF THE PROVISIONS OF THE SUBSCRIPTION AGREEMENT.

THE COMPANY WILL MAKE AVAILABLE TO ANY PROSPECTIVE QUALIFIED INVESTOR, PRIOR TO THE CLOSING, THE OPPORTUNITY TO ASK QUESTIONS OF AND RECEIVE ANSWERS FROM THE COMPANY OR PERSONS ACTING ON BEHALF OF THE COMPANY CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING AND THE BUSINESS AND OPERATIONS OF THE COMPANY, AND TO OBTAIN ANY ADDITIONAL INFORMATION TO THE EXTENT THE COMPANY POSSESSES SUCH INFORMATION.

NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS (WHETHER ORAL OR WRITTEN) IN CONNECTION WITH THIS OFFERING EXCEPT SUCH INFORMATION AS IS CONTAINED IN THIS MEMORANDUM AND IN THE EXHIBITS HERETO AND DOCUMENTS SUMMARIZED HEREIN. ONLY INFORMATION OR REPRESENTATIONS CONTAINED THEREIN MAY BE RELIED UPON AS HAVING BEEN AUTHORIZED.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM, OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY OR ANY OF ITS AGENTS, OFFICERS, OR REPRESENTATIVES, AS LEGAL OR TAX ADVICE. EACH OFFEREE SHOULD CONSULT HIS OWN ADVISERS AS TO LEGAL, TAX ADVICE. EACH OFFEREE SHOULD CONSULT HIS OWN ADVISERS AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING AN INVESTMENT IN THE COMPANY.

THIS MEMORANDUM IS NOT AN OFFER TO SELL TO OR A SOLICITATION OF AN OFFER TO BUY FROM, NOR SHALL ANY SECURITIES BE OFFERED OR SOLD TO, ANY PERSON IN ANY JURISDICTION IN WHICH SUCH OFFER, SOLICITATION, PURCHASE OR SALE WOULD BE UNLAWFUL UNDER THE SECURITIES LAWS OF SUCH JURISDICTION.

AS A PURCHASER OF THE SECURITIES IN A PRIVATE PLACEMENT NOT REGISTERED UNDER THE SECURITIES ACT OF 1933, EACH INVESTOR SHOULD PROCEED ON THE ASSUMPTION THAT THE ECONOMIC RISK OF THE INVESTMENT MUST BE BORNE FOR AN INDEFINITE PERIOD, SINCE THE SECURITIES MAY NOT BE RESOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OR AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR, AND SHOULD BE USED ONLY IN CONNECTION WITH, CONSIDERATION BY PROSPECTIVE INVESTORS OF AN INVESTMENT IN THE SECURITIES. THE OFFEREE, BY ACCEPTING DELIVERY OF THIS MEMORANDUM, AGREES TO RETURN IT AND ALL ENCLOSED DOCUMENTS TO THE COMPANY IF THE OFFEREE DOES NOT SUBSCRIBE FOR INTERESTS WITHIN THE TIME PERIOD STATED BELOW. ANY REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, OR RETRANSMITTAL OF ITS CONTENTS, IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY IS PROHIBITED.

THIS OFFERING WILL CONTINUE IN CONNECTION WITH THE OFFERING AND SALE OF THE SECURITIES, THE COMPANY RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO REJECT ANY SUBSCRIPTION BY ANY INVESTOR AND TO HOLD MULTIPLE CLOSINGS.

## Executive Summary of the Offering

Company is a California limited liability company in formation. The Company is a start up company which will engage in the business of purchasing real estate owned by banks and other financial institutions which have been foreclosed upon and which the bank or other financial institution desires to sell in bulk or in large lots to a buyer.

### Interests Offered:

An ownership interest as a member of the Company with an investment of a minimum of $100,000 and a maximum of $5,000,000 for a total investment of $5,000,000.

### Offering Price

$1 per each membership share.

### Minimum Investment

Minimum investment of $100,000.

### Use of Proceeds

The entire proceeds, less real estate sales commissions, repair and prepping of property purchased for resale, management fees and costs and sales, legal, set up and marketing fees, shall be used to purchase one or more large inventories of bank or other financial

institution residential real estate portfolio(s). The properties purchased will be rehabilitated and resold on the open market as soon as necessary repairs, if any, are made to the properties.

**Jacklyn Johnston will be invested into the 2400 Lockhart Gulch, Scotts Valley Project specifically. She will be investing $400,000 and will receive $440,000 upon the sale of the project.**

*200,000*

*Jacklyn Anne Johnston*

## Issuance of Shares

Subscription funds will be deposited in the Company's account at Heritage Bank of Commerce. Each investor will become a member of the Company by execution of the Company's Operating Agreement, a copy of which is attached hereto as <u>Exhibit A</u> and made a part hereof for all purposes.

## Risk Factors

Purchase of Interests by an investor is speculative and involves a high degree of risk.

## Suitability Standards

An investment in the securities offered by this Memorandum is suitable only for the sophisticated investor who has business and financial experience (either alone or with his purchase representative) such that the investor is capable of evaluating the merits and risks of an investment in the Company and of protecting the investor's interest in the transaction.

## Financial Projections

Financial projections are included under that heading in this Memorandum. Financial projections are forward looking statements that are highly uncertain as to the likelihood of their eventual outcome.

## *Investor Suitability Standards*

THIS OFFERING IS MADE IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), FOR OFFERS AND SALES OF SECURITIES THAT DO NOT INVOLVE A PUBLIC OFFERING. EACH INVESTOR WILL BE REQUIRED TO REPRESENT THAT THE INTERESTS ARE BEING ACQUIRED FOR THE INVESTOR'S OWN ACCOUNT, AND NOT FOR THE ACCOUNT OF OTHERS, FOR INVESTMENT PURPOSES ONLY AND NOT WITH A VIEW TO THE SALE OR DISTRIBUTION THEREOF IN WHOLE OR IN PART. THE SPECULATIVE NATURE OF THE COMPANY'S BUSINESS, TOGETHER WITH THE LACK OF LIQUIDITY OF THE INTERESTS, MAKES THE PURCHASE OF INTERESTS SUITABLE ONLY FOR INVESTORS WHO HAVE ADEQUATE FINANCIAL MEANS AND WHO CAN

AFFORD THE TOTAL LOSS OF THEIR INVESTMENT. ACCORDINGLY, INVESTORS WILL BE REQUIRED TO MAKE CERTAIN REPRESENTATIONS AS TO THEIR NET WORTH, INCOME AND ABILITY TO BEAR THE LOSS OF THEIR INVESTMENT.

THE SUITABILITY STANDARDS DISCUSSED BELOW REPRESENT MINIMUM SUITABILITY STANDARDS FOR PROSPECTIVE INVESTORS. PROSPECTIVE INVESTORS ARE ENCOURAGED TO CONSULT THEIR OWN INVESTMENT OR TAX ADVISERS, ACCOUNTANTS, LEGAL COUNSEL OR OTHER ADVISERS TO DETERMINE WHETHER AN INVESTMENT IN THE INTERESTS IS APPROPRIATE. SEE "RISK FACTORS".

An investment in the Interests is designed for sophisticated investors who have business and financial experience, either individually or together with their purchaser representative, such that they are capable of evaluating the merits and risks of an investment in the Company and of protecting their interests in the transaction.

Additionally, Interests will only be sold to investors who represent in writing (in the Subscription Agreement) that they have either: (1) a net worth (exclusive of home, home furnishings and automobiles) or at least $300,000 (assets valued at fair market value), plus an annual gross income of at least $200,000; or (2) irrespective of annual gross income, a net worth (exclusive of home, home furnishings and automobiles) of at least $1,000,000 (assets valued at fair market value), either individually or jointly with his or her spouse.

The Interests are intended primarily for investors who fall into one of the following categories of "accredited investors" as defined by Regulation D under the Act:

(1)     The investor is a natural person whose net worth, or joint net worth with spouse, at the time of purchase exceeds $1 million (including the value of home, home furnishings and automobiles); or

(2)     The investor is a natural person whose individual gross income exceeded $200,000 for the past two years, and who reasonably expects to reach the same income level in 2012; or

(3)     The investor is a Managing Member of the Company, or a member of the Management Team; or

(4)     The investor is an entity, all of the owners of which are accredited investors.

The Securities and Exchange Commission has expressed the view that, in determining personal income, an investor should add to adjusted gross income any amount of income received that is tax exempt under Section 103 of the Internal Revenue Code (the "Code"), losses claimed as a limited partner in any limited partnership as reported on Schedule E

of Form 1040, deductions claimed for depletion under Section 611 of the Code any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to section 1202 of the Code.

Interests may also be sold to a limited number of nonaccredited persons who are sophisticated investors and who otherwise meet the minimum suitability standards set forth in the third and fourth paragraphs in this section of the Memorandum.

The Company reserves the right to make its own judgment on whether any prospective investor meets the suitability standards. Certain other representations and warranties are contained in the Subscription Agreement. In addition, a prospective investor will be required to provide such evidence as may be deemed necessary to substantiate the accuracy of such representations. The above suitability standards are minimum requirements for prospective investors, and the satisfaction of these standards does not necessarily mean that the Interests are a suitable investment for a prospective investor.

EACH PROSPECTIVE INVESTOR SHOULD OBTAIN THE ADVICE OF THE INVESTOR'S ATTORNEY, TAX CONSULTANT AND/OR BUSINESS ADVISER WITH RESPECT TO THE LEGAL, TAX AND BUSINESS ASPECTS OF THIS INVESTMENT PRIOR TO SUBSCRIBING FOR THESE SECURITIES.

THIS PRIVATE PLACEMENT MEMORANDUM SHALL NOT CONSTITUTE AN OFFER TO SELL TO, OR A SOLICITATION OF AN OFFER TO BUY FROM ANY PERSON WHO DOES NOT MEET THE SUITABILITY STANDARDS SET FORTH HEREIN AND IN THE SUBSCRIPTION AGREEMENT.

This Memorandum contains projections. Projections are hypothetical and based upon present factors influencing the business of the Company. Assumptions regarding future changes in sales and revenues are necessarily speculative in nature. In addition, projections do not and cannot take into account such factors as general economic conditions, unforeseen changes and developments in the economy, the entry into the Company's market of significant additional competitors, natural disasters effecting the facilities which house the Company, the terms and conditions of future financings of the Company, and other risks inherent to the business of the Company. While management believes that the projections reflect the possible future results of the Company's operations, such results cannot be guaranteed. Investors must be prepared for the substantial economic risks involved in the purchase of the Securities, including the total loss of their investment.

### Description of Membership Interests

The Company's authorized membership interests shall be $5,000,000 all of which are valued at $1.00 per membership interest.

As of the date of this Memorandum, ten percent (10%) of the membership interests were held by the Management Team which consists of various vendors who will render

services to the Company with regard to financial and legal advice, accounting and real estate services and trade services including renovation of the properties purchased.

The Company shall be run by a Managing Member who shall have all of the rights set forth in the attached Operating Agreement. The initial Managing Member shall be Steve Bonner.

## Use of Proceeds

The proceeds to the Company from this offering are estimated to be $5,000,000 assuming that all Interests are sold, and that the sale is at the asking price.

The Company intends to use the funds from this offering to purchase real estate owned by banks and other financial institutions which have been foreclosed upon and which the bank or other financial institution desires to sell in bulk or in large lots to a buyer. The funds shall also be used to finance the start up costs of the Company including the payment of real estate sales commissions, repair and prepping of the properties purchased, management fees, miscellaneous management costs and sales, legal, set up and marketing fees.

## Determination of the Offering Price and Restrictions on Transfer

The offering price for the Interests being sold was determined by the Company. Such price was based on a number of factors including the estimates of the business potential and earnings prospects of the Company, the consideration of the above factors in relation to market valuations of the properties to be purchased, and the current condition of the market and the economy as a whole. The offering price should not, however, be considered a determination of the actual value of the Interests.

The Interests are being offered pursuant to exemptions from the registration requirements of the Securities Act of 1933 and must be held indefinitely unless it is subsequently registered under the Securities Act of 1933 or an exemption from such registration is available and state securities laws are complied with. The Company is under no obligation to register the Interests issuable under the Securities Act of 1933 or any state securities laws. The Operating Agreement will bear appropriate legends with respect to these restrictions.

Rule 144 under the Securities Act of 1933 governs the resale of restricted securities. Sales of securities in reliance upon Rule 144 can be made only in accordance with the terms of that rule which permits nonaffiliated of the Company that have held securities to sell such securities after three years. In the case of securities to which Rule 144 is not applicable, an exemption under the Securities Act of 1933 will be required to effect a sale.

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 35 of 52

Rule 144A under the Securities Act of 1933 permits the resale of restricted securities to qualified institutional buyers. Sales of securities under Rule 144A may be made only if the Company agrees to provide certain information to such buyers. Because the Company has not agreed to provide such information, rule 144A will not be available for sales of the Common Stock.

## Management of the Company



The development and management of the Company will be under the direction of Johanna Bonner and a Board of Advisors comprised of, Roger D. Wintle, attorney with The Heritage Law Group, Susan Weber, C.P.A. with Weber and Company, Christine Frazier of Allied Real Estate Group, real estate advisors, Gabriel Perez of Lynx Developers, consultant in development and Ray Diaz, project manager at Allied Master Builders. A brief description of the management team of the Company follows:

**ADVISORS:**

<u>Roger D. Wintle:</u>



**Professional Profile:**

Mr. Wintle is a founder and partner in the Heritage Law Group with offices at 152 North Third Street, Ste. 550, San Jose, California 95112. Mr. Wintle has 30 years of experience in the practice of law. Mr. Wintle specializes in real estate matters and counsels business clients in real estate and business transactions. Mr. Wintle also represents clients before the California Department of Real Estate and represents clients in mediations, arbitrations and litigation in Federal and State Court throughout California. Mr. Wintle is licensed to practice law in Texas (inactive) and California. Prior to becoming an attorney, Mr. Wintle had a career in education as both a teacher and a head master in private schools. Mr. Wintle has taught courses on the college level and is a frequent public speaker having appeared on numerous local television programs as well as other venues.

Mr. Wintle will also be an investor.

## CAREER ACCOMPLISHMENTS

**Heritage Law Group**          2003 to present

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 36 of 52

General business practice with an emphasis on real estate. Managing partner in San Jose office. Mr. Wintle represents real estate agents, brokers, real estate boards, developers, real estate owners, small and medium business owners, start up companies.

**Wintle & Kane, LLP**       1995 – 2003
General business practice with an emphasis on real estate located in San Jose.

**Ferrari, Ottoboni**       1989 – 1995
Real Estate Attorney in San Jose.

**Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson and Casey** 1987 - 1989
Real Estate Attorney in firm's Dallas, Texas office.

**Shank, Irwin & Conant**    1982 - 1987
Real Estate Attorney, Dallas, Texas.

EDUCATION

San Jose State University, BA in History
University of North Dakota, BA in Education
University of Bridgeport, MA in Education
University of San Diego, JD in Law

**Susan Weber:**



**Professional Profile:**

Susan is a principal of Weber and Company, Inc. a Certified Public Accounting and business consulting firm. Her area of professional concentration include tax services for privately held businesses, real estate ventures, technology companies, multistate and international entities, high net worth individuals and estate and trusts. Susan's clients range from multi-tiered partnerships and corporate entities, to closely held companies and to successful entrepreneurs. Susan has many years of experience in Internal Revenue Service and state tax controversy including international tax controversy for individuals in the amnesty program and complex international corporation tax issues.

Susan has worked with Mr. Bonner personally as well as with his many businesses for 17 years now performing all forms of accounting services and tax preparation. She will be a tremendous advantage for the team and investors with her extensive experience in this area of Real Estate accounting. Mr. Bonner has requested 100% transparency for every dollar of this venture, something Mrs. Weber is highly accomplished at delivering.

Mrs. Weber will also be an investor.

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 37 of 52

# CAREER ACCOMPLISHMENTS

Susan is a Certified Public Accountant with over 25 years of experience in public accounting. She was previously with Armstrong, Bastow and Potter which merged with KPMG. Susan also previously founded the public accounting firm of Weber, Sanford and Company.

**Education:**

Graduate Certificate in International Tax -- Golden Gate University
Golden Gate University Master of Taxation -- Golden Gate University
Bachelor of Science, Business with Accounting Emphasis -- San Jose State University
STEP member International Society of Estates and Trusts with over 35 branches in different countries

**Johanna Bonner:**



**Professional Profile:**

Johanna Bonner was born in Germany where she went to high school and studied medicine at Ernst-Moritz-Arndt university of Greifswald. She did her internship to become a pediatric surgeon in Switzerland and Grenada, W.I. and completed her Medical Degree in May, 2008.

Johanna moved officially to California in the beginning of 2009 where her focus has been Real Estate. She hangs her real estate license with Coldwell Banker and will be the main Real Estate Agent for the company. Coldwell Banker, one of the best Real Estate companies in the national and international market, will provide great assistance in the expedient sales of purchased property in addition to valuable knowledge on property viability.

There are over 84 agents in this office alone to assist in the sales of all real estate acquisitions in addition to a huge network of agents in Mr. Bonner's firm.

Johanna possesses a true likeability and honesty that sets her apart from many agents and that has proven to add to her success.

She is extremely detailed oriented with relentless ability to research, traits she has proven while earning her medical degree. These same traits provide valuable advice to our team on the acquisition side of the business. The combination of Johanna and her husband, Steve Bonner, with his vast array of contacts make their working in tandem very effective in the both the acquisition and sales of real estate.

Johanna and her husband live in San Jose with their two young children.

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 38 of 52

**Christine Frazier:**

Christine Frazier has 15 years of real estate experience, is a broker and CEO of Allied Real Estate Group and an influential part of the advisor group.


## Documents Available for Inspection

The following is a list of documents available for inspection by prospective purchasers of Interests offered in this Memorandum.

1. Articles of Organization of the Company (On request).
2. Operating Agreement of the Company (Attached as Exhibit A).
3. Business Plan of the Company (Included).
4. Financial Projections of the Company (Included).

# II  Management's Discussion and Analysis of Financial Condition and Results of Operations

## Introduction

Company is a privately held start up limited liability company in formation.

## Executive Summary of Business Plan

Due to the market collapse of residential real estate, banks and other financial institutions have conducted a record number of foreclosures and are holding a great deal of inventory which needs to be sold in large blocks of properties to avoid having to sell each property one at a time. Inventory in the Bay Area is low and prices appear to be stabilizing. The Company believes that there is a limited opportunity to purchase foreclosed inventory at a discount provided the Company is prepared to invest a minimum of $5,000,000 in order to purchase foreclosed inventory.

Time is of the essence. The Company believes that there is a window of opportunity to purchase these foreclosed properties and, once these individual properties have been repaired to sell the individual properties at a profit.

## Objectives

- To raise sufficient capital to go out into the market place and purchase foreclosed properties from banks and other financial institutions at a discount based on the number of properties being purchased.

- To evaluate each property for repairs, cosmetic improvements such as paint and landscaping in order to make each property presentable for sale in its "AS IS"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

Johnston v. Bonner     COMPLAINT     6

# View Document - 16CV03031 -

Pages: 2

 **Superior Court of California, Santa Cruz**
**MINUTE ORDER**

Jacklyn Johnston                                          16CV03031
vs
Steven Bonner, et al

---

Heard By:    Burdick, Paul                               Santa Cruz Department 5
                                                         Predisposition Hearing
Courtroom Clerk:        Amanda Lucas                     10/04/2017
Courtroom Reporter:     Heidi Bloemker                   8:30 AM - 9:00 AM
Court Interpreter:

**Parties Present:**

Hain, Jack                          Attorney
Little, James B                     Attorney

---

This is the time regularly set for hearing on Motion to be Relieved as Counsel.

Mr. Little advises the Court that his client is not aware of the Motion as he has removed himself from jurisdiction.

The Court continues this matter to 10/18/17.

**Future Hearings:**

October 18, 2017 8:30 AM Discovery Hearing
Gallagher, John
Santa Cruz Department 10

October 18, 2017 8:30 AM Discovery Hearing
Gallagher, John
Santa Cruz Department 10

October 18, 2017 8:30 AM Discovery Hearing
Gallagher, John
Santa Cruz Department 10

October 18, 2017 8:30 AM Discovery Hearing
Gallagher, John



**Superior Court of California, Santa Cruz**
**MINUTE ORDER**

Jacklyn Johnston
vs
Steven Bonner, et al

16CV03031

Santa Cruz Department 10

October 18, 2017 8:30 AM Discovery Hearing
Gallagher, John
Santa Cruz Department 10

October 18, 2017 8:30 AM Predisposition Hearing
Gallagher, John
Santa Cruz Department 10

October 26, 2017 8:30 AM Further Case Management Conference
Gallagher, John
Santa Cruz Department 10

*Canceled: November 15, 2017 9:00 AM Mediation Hearing*
*Reason: Canceled as the result of a hearing cancel, Hearing Canceled Reason: Vacated*
*Gallagher, John*
*Santa Cruz Department 10*

November 27, 2017 8:30 AM Discovery Hearing
Gallagher, John
Santa Cruz Department 10

*Canceled: January 04, 2018 1:30 PM Trial Calendar Call*
*Reason: Canceled as the result of a hearing cancel, Hearing Canceled Reason: Vacated*
*Guy, Denine*
*Santa Cruz Department 2*

Pages: 2

Back    Download Document

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

Johnston v. Bonner   Case No.: 19-52354 MEH 7

Jack Hain, Esq. CSB# 104149
55 River Street, Suite 150
Santa Cruz, CA 95060
831-515-7615, cell: 831-227-4589
jhain@pacbell.net

Attorney for plaintiff, Jacklyn A. Johnston

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
9/14/2018 2:16 PM
Alex Calvo, Clerk
By: Araceli Lopez, Deputy

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CRUZ

Jacklyn A. Johnston,
      Plaintiff,
  vs.
Steven E. Bonner, Principal Securities, Inc. and DOES 1-9,
      Defendants.

Associated cross-claim

Case No.: 16CV03031

NOTICE OF ENTRY OF ORDER

Date: 9/11/18
Dept. Department 4
Time: 8:30 am
Hon. John Gallagher

To all parties and their attorneys of record:

NOTICE IS HEREBY GIVEN that the Court, on September 11, 2018, entered an Order granting plaintiff's motion for judgment by default against Defendant, Steven E. Bonner, and awarding plaintiff $566.70 in costs and attorney's fees.

    A copy of the Order, issued on September 11, 2018, and signed and filed on September 11, 2018, is attached, hereto.

Dated: _____9/14/18___.

_____
Jack Hain, attorney for plaintiff

Johnston v. Bonner, et al., Case No. 16CV03031         NOTICE OF ENTRY OF ORDER

1  Jack Hain, Esq. CSB# 104149
2  55 River Street, Suite 150
   Santa Cruz, CA  95060
3  831-515-7615, cell: 831-227-4589
   jhain@pacbell.net
4
5  Attorney for plaintiff, Jacklyn A. Johnston

Filed
September 11, 2018
Alex Calvo, Clerk
By Gonzalez, Sandra
Deputy, Santa Cruz County

6

7

8              SUPERIOR COURT OF CALIFORNIA
               COUNTY OF SANTA CRUZ
9

10 Jacklyn A. Johnston,              ) Case No.: 16CV03031
              Plaintiff,            )
11         vs.                       ) [PROPOSED]
   Steven E. Bonner, Principal Securities, ) ORDER
12 Inc. and DOES 1-9,                )
              Defendants.            ) C.C.P. Section 2023.030
13 _____       )
                                     )
14 Associated cross-claim.           ) Hearing Date: 9/7/18
   _____         Department 4
15                                     Time: 8:30 am
                                       Honorable John Gallagher
16

17 The unopposed motion is GRANTED.

18         As a result of evidence that defendant, Steven E. Bonner, has disobeyed orders

19 of this court to produce documents pursuant to discovery demands and further evidence

20 that he has abused the discovery process,

21 IT IS HEREBY ORDERED that judgment by default is to be entered against Defendant,

22 Steven E. Bonner.

23         IT IS FURTHER ORDERED that Defendant Steven E. Bonner is to pay Plaintiff,

24 Jacklyn A. Johnston $566.70 for costs and attorney's fees.

25

26

27 Date:    9/11/18              _____John Gallagher_____

28                              John Gallagher, Judge of the Superior Court

Johnston v. Bonner, et al.,              ORDER                          1

# EXHIBIT 4

Johnston v. Bonner       COMPLAINT       8

Jack Hain, Esq. CSB# 104149
55 River Street, Suite 150
Santa Cruz, CA 95060
831-515-7615, cell: 831-227-4589
jhain@pacbell.net

Attorney for plaintiff, Jacklyn A. Johnston

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SANTA CRUZ

| | |
|---|---|
| Jacklyn A. Johnston,<br>          Plaintiff,<br>     vs.<br>Steven E. Bonner, Principal Securities,<br>Inc. and DOES 1-9,<br>          Defendants.<br><br>Associated cross-claims | Case No.: 16CV03031<br><br>NOTICE OF ENTRY OF DEFAULT<br>JUDGMENT<br><br>Complaint filed:    11/16/16<br>First Amended Complaint filed: 1/13/17<br>Second Amended Complaint filed: 8/28/17<br>Trial Date: 10/4/19 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that default judgment against Defendant, Bay Area

Acquisitions and Sales, L.L.C., was entered on August 5, 2019. A copy is attached.

Dated: _____8/6/19_____ .

_____
Jack Hain, attorney for plaintiff

Johnston v. Bonner, et al., Case No. 16CV03031    NOTICE OF ENTRY OF DEFAULT JUDGEMENT

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 48 of 52



1  Jack Hain, Esq., SBN 104149
2  55 River Street, Suite 150
   Santa Cruz, CA 95962
3  831-515-7615

4  Attorney for Jacklyn A. Johnston

FILED
AUG 05 2019
ALEX CALVO, CLERK
BY ARACELI LOPEZ
DEPUTY, SANTA CRUZ COUNTY

5

6

7

8              SUPERIOR COURT OF CALIFORNIA
                 COUNTY OF SANTA CRUZ
9

10  JACKLYN A. JOHNSTON,            ) Case No.: 16CV03031
             Plaintiff,            )
11      vs                         )
                                   )
12  STEVEN E. BONNER, JOHANNA      ) DEFAULT JUDGMENT IN FAVOR OF
    BONNER, ROGER G. WINTLE, SUSAN ) PLAINTIFF AND AGAINST DEFENDANT
13  WEBER, CHRISTINE FRAZIER,      ) BAY AREA ACQUISITIONS AND SALES,
    GABRIEL PEREZ, RAY DIAZ, BAY AREA ) L.L.C. (BAAS)
14  ACQUISITIONS AND SALES, L.L.C.,  )
    PRINCIPAL SECURITIES, INC. and  )          CCP §585
15  DOES 1-9,                      )
             Defendants           )
16                                 )
                                   )
17  _____)
                                   )
18  Various cross-claims           )
    _____)
19                                   Hearing Date: August 5, 2019
                                     Time: 8:30 AM
20                                   Department 10
                                     Hon. John Gallagher
21

22      The Court having reviewed Plaintiff's unopposed Motion for default judgment

23  against BAAS, finding good cause appearing therefrom, the motion for judgment is

24  granted.

25      Judgment shall be entered in favor of Plaintiff and against Bay Area Acquisitions

26  in the amount of:

27      Loan principal                          $200,000.00

28      Interest for 4 years and 342 days (8/29/14-8/5/19) =      $98,739.72

Johnston V. Bonner, et al.  DEFAULT JUDGMENT AGAINST DEFENDANT BAAS            1

| | | |
|---|---|---|
| Unpaid sanctions per order dated 8/10/18 | | $1,500.00 |
| Punitive Damages in the amount of | | $50,000.00 |
| | **TOTAL** | **$350,239.72** |

Date: 8/5/19


JOHN GALLAGHER
_____

Hon. John Gallagher,
Judge of the Superior Court

Johnston V. Bonner, et al.   DEFAULT JUDGMENT AGAINST DEFENDANT BAAS                    2

Case: 20-05008    Doc# 1    Filed: 02/13/20    Entered: 02/13/20 14:01:36    Page 49 of
52

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
55 River Street, Suite 150, Santa Cruz, CA 95060

A true and correct copy of the foregoing document entitled (*specify*): Complaint for damages and nondischargeability of debt, proof of service of document, Adversary Proceeding cover sheet, Jacklyn Johnston counsel's notice of appearance, all for _____

19-52354 MEH 7

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __2/12/2020__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
IRS Central Insolvency, P.O. Box 7436, Philadelphia, PA 19101, Creditor; Capital One, P.O. Box 30285, Salt Lake City, UT 84130, creditor;
Chase Card Services, Attn.: Bankruptcy, P.O. Box 15298, Wilmington, DE 19850; Citi/Sears, Centralized Bankruptcy, P.O. Box 790034
St. Louis, MO 63179; Macy's Bank, Attn: Bankruptcy, 9111 Duke Blvd.,, Mason, OH 45040, Discover Financial, Attn.<Bankruptcy, P.O. Box 15316,Wilmington, DE, 19850

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/12/20 | Jack Hain | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                **F 9013-3.1.PROOF.SERVICE**

Jack Hain, Esq.
55 River Street - Suite 150
Santa Cruz, CA 95060
831-515-7615
jackhain3721@gmail.com
Attorney for Jacklyn A. Johnston

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: ) Case No.: 19-52354 MEH 7

Steven Eugene Bonner,
   Debtor, ) PROOF OF SERVICE

Jacklyn A. Johnston,
   Plaintiff,
   vs.
Steven Bonner,
   Defendant

I, THE UNDERSIGNED DECLARE:

I am a citizen of the U.S. and resident of Santa Cruz County. I am over the age of 18

years and not a party to the within action. My business address is 55 River Street, Suite

150, Santa Cruz, CA 95060.

On February 13, 2020, I served the within documents:

Jacklyn Johnston's Counsel's notice of appearance, Adversary Proceeding Cover

Sheet, Complaint for Damages and NonDischargeability of Debt with Exhibits, 2 Proofs

of Service of Documents

By mailing a true copy in a sealed envelope with adequate postage in the US mail

addressed to the following:

Michael Brisbin,
Wilson, Elser Moskowitz et al LLP

Johnston v. Bonner    COMPLAINT    Case No.: 19-52354 MEH 7    1

525 Market Street, 17th Floor
San Francisco, CA 94105

The Bankruptcy Court
Doris A. Kaelin, Bankruptcy Trustee
P.O. Box 1582
Santa Cruz, CA 95061

Elise M. Mitchell
320 South 3rd Street, Suite 101
San Jose, CA 95112

Michael Stone
Stone Siegel Law Firm
1726 Seabright Avenue
Santa Cruz, CA 95062

I also served the following individuals by email transmission:

· Jim Little at jblittle@jps.net; Jason Farwell at jason@farwellrashkis.com; Elise Mitchell at elise@mitchell-law.com; J. Fulton at jfulton@jfultonlaw.com Michael Weisberg at michael.weisberg5@yahoo.com; M Picone mlp@leader-picone.com; Steve Farwell at steve@farwellrashkis.com; B. Affrunti at baffrunti@bwslaw.com George Dowel at george@dowell-law.com;

Date: February 13, 2020

Jack Hain, attorney for plaintiff, Jacklyn A. Johnston

Johnston v. Bonner        COMPLAINT        Case No.: 19-52354 MEH 7        2